UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF MISSISSIPPI

IN RE: RALF P. RIEDEL                                    CASE NO. 10-51106-KMS
       & SYLVANA M. RIEDEL

DEBTORS                                                  CHAPTER 13

MEMORANDUM OPINION AND ORDER
DENYING MOTION TO ENFORCE SETTLEMENT

This matter came on for hearing on August 4, 2011, (the "Hearing") on the Motion to Enforce Settlement Against the Debtor (the "Motion") (Dkt. No. 49) filed by Creditor Jay Foster ("Foster") and the Response filed by the Debtors, Ralf and Sylvia Riedel (the "Riedels"). (Dkt. No. 54). At the Hearing, Foster, an attorney, represented himself and the Riedels were represented by Rickey Hemba ("Hemba"). At the conclusion of the Hearing, the Court took the Motion under advisement and ordered the attorneys to submit briefs on the relevant legal standards, affidavits regarding any pertinent conversations they may have had with each other concerning the settlement at issue and any relevant documentation. (Dkt. No. 61). In sum, the Court must determine whether Foster has satisfied his burden of proof to establish that there was an agreement between Foster and Hemba obligating Hemba and/or the Riedels to dismiss an appeal pending in state court. For the reasons that follow, the Court finds that Foster's Motion, (Dkt. No. 49), should be **DENIED**.

I. JURISDICTION

The Court has jurisdiction of the parties to and the subject matter of this proceeding pursuant to 28 U.S.C. §§ 157 and 1334. The settlement at issue arises out of an adversary proceeding filed by Foster. See Jay Foster, PLLC v. Riedel (In re Riedel), No. 10-05042-KMS

(Bankr. S.D. Miss. filed July 14, 2010) (cited herein as Adv. Dkt. No. ___). In the adversary, Foster, a state court judgment creditor, asserted that his claim against the Riedels was non-dischargeable under 11 U.S.C. § 523(a)(6). This non-dischargeability claim is a core proceeding since it invokes a substantive right provided by Title 11 and since this proceeding, by its nature, could arise only in the context of a bankruptcy case. See Wood v. Wood (In re Wood), 825 F.2d 90, 97 (5th Cir. 1987); see also 28 U.S.C. § 157(b)(2)(A), (I), (J). Because Foster's Motion to Enforce the Settlement Agreement is ancillary to and arises from this core matter, it is also a core matter. Cf. Mountain Am. Credit Union v. Skinner (In re Skinner), 917 F.2d 444, 448 (10th Cir. 1990) ("Civil contempt proceedings arising out of core matters are themselves core matters."). Furthermore, the Court entered an order submitted by the parties settling the adversary proceeding on certain enumerated terms. (the "Agreed Order") (Adv. Dkt. No. 37). To the extent that Foster's Motion relates to the Agreed Order, the Court retains jurisdiction to review, interpret and enforce its order. See Rodriguez v. EMC Mortg. Corp. (In re Rodriquez), 252 F.3d 435, 2001 WL 360713, at *2 (5th Cir. 2001) (quoting In re Terracor, 86 B.R. 671, 677 (D. Utah 1988)); Cano v. GMAC Mortg. Corp. (In re Cano), 410 B.R. 506, 546 (Bankr. S.D. Tex. 2009) (quoting Travelers Indem. Co. v. Bailey, -- U.S. --, 129 S.Ct. 2195, 2205 (2009)); Nat'l Benevolent Ass'n of the Christian Church v. Weil Gotshal & Manges, LLP (In re Nat'l Benevolent Ass'n of the Christian Church), 333 F. App'x 822, 827 (5th Cir. 2009).

## II. BACKGROUND

On May 13, 2010, the Riedels filed a voluntary petition for relief under Chapter 13 of the Bankruptcy Code. See In re Ralf P. Riedel and Sylvana M. Riedel, No. 10-51106-KMS (Bankr. S.D. Miss. filed May 13, 2010) (cited herein as Dkt. No. ___). The Claims Registry reflects that

on June 10, 2010, Foster filed a proof of claim in which he asserted that he had state court judgments entitling him to "$5,629.14 + 14,737.17." Foster maintained that his claim was secured. On June 23, 2010, the Riedels filed an objection to Foster's proof of claim asserting it was not secured but rather should be paid as an unsecured, non-priority debt. (Dkt. No. 16). Foster, filed a response to the Riedels' objection on July 1, 2010. (Dkt. No. 23).

On July 14, 2010, Foster initiated an adversary proceeding asserting that:

> Plaintiff is the judgment creditor of Ralf Riedel and Sylvana Riedel. Jay Foster, PLLC filed a lawsuit against the Debtors for failure to pay legal fees and expenses. The Harrison County Court granted a Default Judgment and granted sanctions under the Litigation Accountability Act of the State of Mississippi, said judgment being in the principle amount of $14,737.17, and enrolled on the judgment rolls of Harrison County, Mississippi.

(Adv. Dkt. No. 1 at 2). In his adversary complaint, Foster alleged that his judgment against the Riedels was non-dischargeable under 11 U.S.C. § 523(a)(6) as a debt arising out of a "willful and malicious injury by the debtor to another entity or to the property of another entity." In their answer, the Riedels denied that Foster's judgment included sanctions under the Litigation Accountability Act and denied that they willfully and maliciously injured Foster. (Adv. Dkt. No. 4). A scheduling order was entered, and, in due course, Foster filed a motion for summary judgment.[1] (Adv. Dkt. Nos. 5, 24).

---

[1]Although Foster cited only 13 exhibits in his motion for summary judgment, he attached 73 different exhibits to that motion containing approximately 2,174 pages of material including documentation from approximately four years of litigation beginning in April of 2007. See, e.g., (Adv. Dkt. No. 24, Ex. 14 at 27, 28). At the Hearing, Foster indicated that the exhibits to his motion for summary judgment contained "everything . . . with the exception of a couple of briefs" related to the State Court Action.

During the Hearing, Foster referenced the exhibits to the motion for summary judgment. The Court notes that when considering a motion for summary judgment it "*need* consider *only* the

On September 2, 2010, the Court entered an agreed order resolving the Riedels' objection to Foster's proof of claim. (Dkt. No. 38). The parties agreed that Foster's claim should be treated as an unsecured, non-priority claim. The parties also agreed that Foster's adversary proceeding would not be affected by the agreement regarding the proof of claim and that the adversary proceeding would be scheduled for trial unless they reached a separate agreement on the dischargeability issue. (Dkt. No. 38).

On November 12, 2010, Hemba informed the Court by telephone that the parties had reached a settlement agreement in the adversary proceeding and that an agreed order would be submitted to the Court for approval. On December 20, 2010, the Court entered the Agreed Order which stated as follows:

> This matter having come on to be heard on Creditor Jay Foster PLLC's Complaint to Determine Dischargeability of Enrolled Judgment Debt (#1) and the Debtors' Response thereto and the Court, having jurisdiction over the parties and the subject matter and having been advised that a settlement has been reached in this matter, does hereby find and order as follows:
>
> THAT $5,000.00 of Creditor Jay Foster PLLC's judgments will be determined non-dischargeable.
>
> THAT Debtor's plan is modified to pay the total of $5,000.00 with no interest to Creditor Jay Foster PLLC, through the Chapter 13 plan, in equal installment payments of $100.00 per month.

---

cited materials, but it *may* consider other materials in the record." Fed. R. Civ. P. 56(c)(3) (emphasis added). Rule 56 of the Federal Rules of Civil Procedure does not impose upon a Court a duty to sift through the record in search of evidence to support's a party's motion for summary judgment. As the Fifth Circuit has often noted, "[j]udges are not like pigs, hunting for truffles buried in briefs." Malacara v. Garber, 353 F.3d 393, 405 (5th Cir. 2003); De La O v. Hous. Auth. of the City of El Paso, 417 F.3d 495, 501 (5th Cir. 2005); Enplanar, Inc. v. Marsh, 11 F.3d 1284, 1297 n.16 (5th Cir. 1994). Similarly, in the context of the present Motion, Foster has a duty to specifically cite to the portions of the record that support his position.

> THAT upon completion of the Chapter 13 plan and payment in full of the $5,000, Creditor Jay Foster PLLC's judgments shall be cancelled in full and that no further claim or action shall be brought against the Debtors. That the Trustee is authorized to increase Debtors' wage order as necessary to provide payment of the foregoing amount and to ensure that claimholders currently being paid through the plan are not adversely effected by the additional debt added herein.
>
> THAT this does not release any sanctions imposed by the county court against Robert Smith.
>
> SO ORDERED AND ADJUDGED.

(Adv. Dkt. No. 37). On January 5, 2011, the adversary case was closed.[2]

On June 8, 2011, Foster filed his Motion to Enforce Settlement Against the Debtor. (Dkt. No. 49). In the Motion, Foster alleges that "[a]s part of the settlement [of the adversary proceeding], the debtors agreed to dismiss their underlying appeal in the Circuit Court of Harrison County, Mississippi." Id. Accordingly, Foster requests that this Court require Hemba to take whatever actions are necessary to dismiss the referenced state court appeal (the "State Court Action"). Hemba filed a response to the Motion denying that he had agreed to dismiss the State Court Action. (Dkt. No. 54).

At the Hearing, the parties established that the State Court Action arises from the same litigation that is the basis of Foster's adversary proceeding and proof of claim, i.e., the alleged failure of the Riedels to pay Foster's legal fees and expenses. Both Foster and Hemba acknowledged that the Agreed Order, (Adv. Dkt. No. 37), is the only written settlement agreement related to the adversary proceeding. The Court noted that the Agreed Order does not

---

[2]In his brief, Foster described the Agreed Order, as the "[o]rder settling [the adversary] case." (Dkt. No. 64).

address dismissal of the State Court Action. Consequently, in order to prevail on his Motion, Foster must establish the existence of an oral agreement regarding dismissal of the State Court Action.

### III. DISCUSSION

**A. Legal Standards Governing Settlement Enforcement.**

According to the Fifth Circuit, "although federal courts possess the inherent power to enforce agreements entered into in settlement of litigation, the construction and enforcement of settlement agreements is governed by the principles of state law applicable to contracts generally." Crowell v. CIGNA Grp. Ins., 410 F. App'x 788, 792 (5th Cir. 2011) (citing E. Energy, Inc. v. UNICO Oil & Gas, Inc., 861 F.2d 1379, 1380 (5th Cir. 1988)). In this case, Mississippi law controls the interpretation and enforcement of the settlement agreement negotiated between Hemba and Foster.

In Mississippi, "a settlement is a contract and is judged by principles of contract law." Parmley v. 84 Lumber Co., 911 So. 2d 569, 573 (Miss. Ct. App. 2005); cf. McManus v. Howard, 569 So. 2d 1213, 1215 (Miss. 1990). Mississippi law recognizes both oral and written contracts. Parmley, 911 So. 2d at 573. In order for there to be a settlement, there must be a meeting of the minds; the party claiming the benefit from the settlement must prove by a preponderance of the evidence that there was a meeting of the minds. Id. at 572; Hastings v. Guillot, 825 So. 2d 20, 23 (Miss. 2002). "No meeting of [the] minds occurs until the offeree accepts the terms and provisions of the offer. Acceptance, however, can occur in a number of different ways . . . ." Ammons v. Cordova Floors, Inc., 904 So. 2d 185, 190 (Miss. Ct. App. 2005). For instance, a settlement agreement may be established by the actions of the parties or the actions of their

respective agents. See Parmley, 911 So. 2d at 572. Under Mississippi law, "[a]n attorney is presumed to have the authority to speak for and bind his client," but "[w]hether or not the attorney has agreed to a settlement on behalf of the client is a question of fact." Parmley, 911 So. 2d at 573.

Mississippi also recognizes what is commonly referred to as the parol evidence rule. See, e.g., Hous. Auth. of the City of Laurel v. Gatlin, 738 So. 2d 249, 251 (Miss. Ct. App. 1998); Great Atl. & Pac. Tea Co. v. Lackey, 397 So. 2d 1100, 1102 (Miss. 1981); Baum v. Lynn, 18 So. 428, 429 (Miss. 1895). Under this rule, when a contract has been reduced to writing, no evidence may be given of the terms of such contract except the writing itself. The Mississippi Supreme Court has emphasized that if a writing is "complete on its face and unambiguous, parol evidence is not admissible to contradict, vary, alter, add to, or detract from, the instrument in the absence of fraud or mistake." Great Atl. & Pac. Tea Co., 397 So. 2d at 1102. "Prior or contemporaneous negotiations are merged into the completed contract." Singing River Mall Co. v. Mark Fields, Inc., 599 So. 2d 938, 946 (Miss. 1992).

**B. Analysis.**

The Agreed Order is clearly evidence of a meeting of the minds sufficient to establish a binding settlement agreement. (Adv. Dkt. No. 37). During the Hearing, both Hemba and Foster acknowledged that the Agreed Order is the only written settlement agreement concerning Foster's adversary proceeding. It appears to be a complete and final statement of the negotiations between Foster and Hemba regarding the dismissal of Foster's adversary. Thus, under the terms of the Agreed Order, Foster's adversary was properly closed and upon the completion of the Chapter 13 plan and the payment to Foster of $5,000, Foster's judgments will

be cancelled in full and no further claim or action may be brought against the Riedels by Foster or another entity on his behalf. Id.

In contrast with the plain language of the Agreed Order, Foster argues that Hemba, on behalf of the Riedels, agreed to dismiss the State Court Action as part of the settlement. Foster bears the burden of proving by a preponderance of the evidence that he and Hemba had a meeting of the minds on this point.

Even considering the parol evidence Foster has submitted, the Court finds that Foster has not satisfied his burden of proof. In support of his arguments, Foster points to a series of self-generated documents, including an affidavit and his personal case notes, and one-sided communications, specifically faxes from Foster to Hemba, that emphasize Foster's belief that the dismissal of the State Court Action was agreed to by both parties. (Dkt. No. 64 & Exs. 2, 3, 5-11, 13, 14). Noticeably absent is any documentation originating from Hemba or signed by Hemba in which Hemba agreed to dismiss the State Court Action as part of the settlement.[3]

Foster also asserts that payments he has received from the Riedels since November of 2010 support his Motion. (Dkt. No. 64 at 1, 3-4). Foster states that he sent a fax to Hemba on November 15, 2010, in which he confirmed the $5,000 settlement and requested that Hemba "submit whatever documents need to be submitted for me to review so we can end the appeal for the Riedels in Circuit Court." (Dkt. No. 64, Ex. 2). According to Foster, payments made subsequent to the fax are evidence that the Riedels agreed to dismiss the State Court Action.

---

[3] Hemba argues that he never agreed to dismiss the State Court Action. Instead, he asserts that he merely suggested that all of the interested parties should schedule a conference with the Circuit Court judge to discuss what implications, if any, the settlement might have on the State Court Action.

Foster fails to recognize that the payments at issue were made by the Chapter 13 Trustee, not by the Riedels. The payments did not increase to $100 per month until after the Agreed Order was entered in December of 2010. Any earlier payments to Foster were made in compliance with the confirmed Chapter 13 plan and the earlier agreed order that specified that Foster's claim would be paid as an unsecured claim.[4] (Dkt. Nos. 38, 40).

Foster has also submitted a cassette tape that he alleges supports his Motion. In a reply brief, Foster explained:

> I anticipated that Hemba would renege on our agreement. Thus, I taped [the last] telephone conversation to ensure that I would not have any problems finalizing this settlement.

(Dkt. No. 66). According to Foster, the tape records a conversation in which Foster and Hemba "specifically discussed the fact that [Hemba] would sign the Agreed Order to dismiss the [State Court Action]." Id.

The cassette tape, billed by Foster to be the proverbial smoking gun, records approximately nineteen seconds of conversation between two people who are not definitively identified during the conversation.[5] The dialogue on the tape is as follows:

> [First Unidentified Individual]: Ummm . . . I think . . . I don't know if I got it. I, let me [unintelligible words] my office in just a second and let me check.
>
> [Second Unidentified Individual]: I'll fax it again.
>
> [First Unidentified Individual]: Fax it one more time Jay.

---

[4] The Riedels' plan, confirmed on September 13, 2010, provided for a 13% payout to unsecured creditors.

[5] The Court listened to the entire ninety minute tape to ensure that it did not contain another recording.

> [Second Unidentified Individual]: Sign and send it back.
>
> [First Unidentified Individual]: 875-0059
>
> [Second Unidentified Individual]: I will do it.
>
> [First Unidentified Individual]: Thank you.
>
> [Second Unidentified Individual]: Sign and send it back.
>
> [First Unidentified Individual]: All right bye.
>
> [Second Unidentified Individual]: All right bye.

(Dkt. No. 66, Ex. 1). Foster argues that the tape is "proof beyond a reasonable doubt that Hemba agreed" to dismiss the State Court Action as part of the settlement of Foster's adversary proceeding. (Dkt. No. 66). The Court disagrees and finds that the tape does not satisfy Foster's burden of proof in this matter.

In his brief, Foster identifies several Mississippi cases that he claims are "virtually identical" to the instant matter and therefore controlling. See Parmley, 911 So. 2d 569; Melton v. Smith's Pecans, Inc., 65 So. 3d 853 (Miss. Ct. App. 2011); Ammons, 904 So. 2d 185. The Court has considered this case law, but finds that these cases are factually distinguishable on several grounds. Chief among these distinctions is the fact that none of the cited state court cases involved a written agreed order that clearly outlined the terms of a settlement.

Finally, Foster offers several arguments based purely on logic. However, logic does not favor Foster in this case. After years of litigation, Foster entered into a written settlement with the Riedels. The Agreed Order settled the adversary case but did not require the dismissal of the State Court Action. Foster could have easily withheld his signature from the Agreed Order until such a provision was inserted. In fact, during the Hearing it was revealed that Foster

did not sign the Agreed Order until the following provision was added: "THAT this [Agreed Order] does not release any sanctions imposed by the county court against Robert Smith."[6] (Adv. Dkt. No. 37). Foster clearly struck a bargain to settle the adversary but has failed to prove by a preponderance of the evidence that the bargain included the dismissal of the State Court Action. This Court will not "rewrite [a settlement] to satisfy the desires" of a particular party. McManus, 569 So. 2d at 1215.

## IV. CONCLUSION

For the reasons stated above, Foster's Motion, (Dkt. No. 49), should be **DENIED**.

**SO ORDERED.**

*/s/ Katharine M. Samson*
Katharine M. Samson
United States Bankruptcy Judge
Dated: October 21, 2011

---

[6] Robert Smith is the attorney representing the Riedels in the State Court Action. (Dkt. No. 65, Ex. 2).